IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| JAMES A. BUTLER, | * |
| Plaintiff, | * |
| vs. | * Civil No. WMN-03-708, |
|  | * Civil No. WMN-03-797, and |
|  | * Civil No. WMN-02-4102 |
| UNITED STATES, | * |
| Defendant. | * |

**DEFENDANT'S SUPPLEMENTAL RESPONSE
TO PLAINTIFF'S MOTION TO COMPEL**[1]

COMES NOW Defendant, by and through counsel, Rod J. Rosenstein, United States Attorney for the District of Maryland, and undersigned Matthew W. Mellady, Special Assistant United States Attorney for said district, and hereby submits this Response to Plaintiff's Motion to Compel.[2]

**I.   STATEMENT OF THE CASE**

---

[1] Defendants herein incorporate by reference facts and arguments concerning exhaustion and mandamus as filed in Paper No. 33, submitted on May 23, 2008.

[2] Since the Defendants' original response on May 23, 2008, witness Dee Hammel continued to scrutinize Plaintiff's commissary account record to ensure its accuracy and therefore the accuracy of the facts for these cases. In fact, this scrutiny resulted in a slight change to his commissary account as Ms. Hammel realized that one of the encumbrances was associated with the wrong PLRA filing fee. She corrected this, which slightly altered the facts. This slight factual change has resulted in a minor modification of Defendants' argument that Plaintiff's commissary account has not been properly encumbered. In all other respects, the Response remains the same.

Petitioner, James Butler, Federal Register Number 10256-050, is a federal inmate incarcerated in the Federal Medical Center (FMC), Rochester, Minnesota.  At the time of the events giving rise to this cause of action, he was incarcerated at the Federal Correctional Institution (FCI), Cumberland, Maryland.  Plaintiff filed the instant Motion asserting that staff at FMC, Rochester continue "to encumbered [sic] funds from plaintiff [sic] account and hold them in violation of the Court Orders since March 3, 2006." [3] He seeks an order to compel the defendants to send the encumbered funds to the Clerk of Court as indicated in the Court's Order if the account exceeded $10.  Id.

## II.  ARGUMENT

**A.     Plaintiff's Commissary Account has not been Improperly Encumbered**

The Prison Litigation Reform Act (PLRA) provides:

> [I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.  The court shall assess and, when funds exist, collect as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of (A) the average monthly deposits to the prisoner's account; or (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

28 U.S.C. § 1915(b)(1). In addition to this initial filing fee, 28 U.S.C. § 1915(b)(2) provides that:

> [T]he prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of court each time the amount in the account exceeds $10 until the filing fees are paid.

---

[3]Based on the document Plaintiff attaches, he must mean August 3, 2006, which corresponds with his transfer to FMC, Rochester.

Legislators had two principle goals in enacting the Prison Litigation Reform Act: first, to moderate the involvement of the federal court system in the state prison system after a finding of unconstitutional treatment; and second, to limit the number of "frivolous" claims filed by inmates. Brian J. Ostrom, Roger A. Hanson, & Fred. L. Cheesman, II, *Congress, Courts and Corrections: An Empirical Perspective on the Prison Litigation Reform Act*, 78 NOTRE DAME L. REV. 1525, 1527-28 (2003). In 1996, before the PLRA was passed, one of every six federal civil lawsuits was filed by a prisoner, but only 1.4% of prisoner litigants were successful. *Id.* at 1525-26. Thus, the PLRA was designed to eliminate the number of allegedly "frivolous" lawsuits filed by prisoners in the already-burdened federal court system. *Id.* at 1532.

By requiring prisoners pay the filing fee in installments from their prison trust account under 28 U.S.C. § 1915(b), the PLRA encourages prisoners to perform a cost-benefit analysis before deciding to file their claim. Eugene J. Kuzinski, Note, *The End of the Prison Law Firm?: Frivolous Inmate Litigation, Judicial Oversight, and the Prison Litigation Reform Act of 1995*, 29 RUTGERS L. J. 361, 384 (1998). Prisoners are furthermore discouraged from filing potentially frivolous claims because, under 28 U.S.C. § 1915(g), a prisoner is barred from bringing a suit in forma pauperis if he has, on three or more prior occasions, had in forma pauperis suits dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief could be granted. The congressional record reveals the reasoning behind imposing such economic disincentives:

> [The PLRA] will require prisoners to pay a very small share of the large burden they place on the Federal judicial system by paying a small filing fee upon commencement of lawsuits. In doing so, the provision will deter frivolous inmate

>lawsuits. The modest monetary outlay will force prisoners to think twice about the case and not just file reflexively. Prisoners will have to make the same decision that law-abiding Americans must make: Is the lawsuit worth the price?

141 Cong. Rec. at S7526 (May 25, 1995) (statement of Senator Kyl) (citation omitted).  See, Roller v. Gunn, 107 F.3d 227, 231 (4th Cir. 1997).  Furthermore, the policy of encouraging prisoners to weigh the costs and benefits of filing a lawsuit not only conserves time and money for the court system, but it also allows the court to focus on litigants with legitimate claims who are using the court system to seek redress for their injuries.  Lumbert v. Ill. Dep't of Corr., 827 F.2d 257, 259 (7th Cir. 1987) ("Litigation is not a free good, and its costs are not limited to those who initiate it. They are borne not only by the plaintiff but by the defendant, by the taxpayer, and by parties to other lawsuits in the same court, whose cases may be delayed or who may receive less attention from the judges than if the caseload were lighter.")

In the instant cases, the Court has informed Plaintiff of *his* obligation to pay the filing fees he has incurred.  (See e.g., case 05-cv-00387, "Plaintiff remains obligated . . . to remit periodic fee payments until such time as the $250.00 filing fee has been paid in full."; see also case 07-cv-00463) .  In addition, the Court Orders in question (see e.g. paper No. 6 in case 03-cv-708), instructed *Plaintiff* to make monthly payments of 20% of *each* preceding month's income credited to his account as continued partial payments on the remainder of his filing fee in each case.

Because Plaintiff's account balance is less than $10, Bureau of Prisons (BOP) officials have encumbered his account to ensure payment of obligations he owes the government (e.g.,

filing fees, medical co-payments, etc.) and court-ordered filing fees. If Plaintiff's account were to exceed $10.00, the amount over $10 would be used to make payments toward Plaintiff's filing fee installment payments first. This would be paid first in/first out basis. That is, the first 20% of the prior month's deposit would be allocated to the oldest/first PLRA filing fee. The second 20% to the second filing fee, and so forth. See Exhibit 1, Declaration of Dee Hammel, ¶¶ 4-5. To be sure, staff will not take any funds if the balance does not exceed $10 and that would cause his account to drop below $10. See Exhibit 1, Declaration of Dee Hammel, Inmate Services Supervisor, ¶ 4. In addition, inmates' accounts may be encumbered for internal BOP issues such as the cost of medical co-payments, photocopies, or postage stamps.[4] Id. at ¶ 5. Plaintiff does not mention this at all, but it is the main reason his funds have been encumbered. Id. at ¶ 10.

Plaintiff argues that the BOP is improperly encumbering his commissary account and holding the funds contrary to the Court's orders. It appears that he is further asserting that BOP officials may only send funds to the Court if his account balance exceeds $10, but to the extent the balance is below $10, staff cannot do anything with his account. Still, he does not specify exactly how the alleged conduct is in violation of the Court's Orders, which only dealt with payment of fees. Moreover, Plaintiff ignores one simple truth: although the Court will not *order* him to pay anything toward his filing fees if his account balance is less than $10, the Court has not *prohibited* him from voluntarily making any such payments. In other words, while the BOP

---

[4]While BOP policy does allow staff to waive the cost of postage stamps or copying, they are not required to do so. See 28 C.F.R. §§ 540.21 and 543.11(g), which also call for limitations to providing these with no cost to the inmate.

may not send funds to the Court if his account balance is below $10, Plaintiff may send any or all of his unencumbered funds to the Court to fulfill his obligations to pay the filing fees he owes. He simply chooses not to do so, preferring to spend his money in the commissary, even when it exceeds $10. See Exhibit 1, Declaration of Dee Hammel, ¶ 7.[5]

Plaintiff if fully aware that he is obligated to pay the filing fees he has accumulated over the past several years. By filing these lawsuits, he has knowingly incurred these filing fees, and he is obligated to pay them. See e.g., In re Prison Litigation Reform Act, 105 F.3d 1131, 1131 (6th Cir. 1997) (administrative order) ("All prisoners while incarcerated must now pay the required filing fees and costs. When an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan. Prisoners are no longer entitled to a waiver of fees and costs."); McGore v. Wrigglesworth, 114 F.3d 601, 605 (6th Cir. 1997) ("As the [PLRA] makes prisoners responsible for their filing fees the moment the civil action or appeal is filed, we conclude that by filing the complaint or notice of appeal, the prisoner waives any objection to the fee assessment by the district court. Furthermore, the prisoner waives any objection to the withdrawal of funds from the trust account by prison officials to pay the prisoner's court fees and costs. . . . Payment of

---

[5] Plaintiff is able to do this due to a loophole in the trust fund system. That is, the system does not check inmates' accounts on a daily basis to determine whether funds in the account exceed $10 and therefore should be encumbered and/or withdrawn to pay filing fee obligations. Instead, the system reviews the accounts on the first of the month. Between such reviews, if the inmate receives additional funds, he is able to shop in the commissary because they are not yet encumbered and will not be until the first of the following month. See Exhibit 1, Declaration of Dee Hammel, ¶ 7.

litigation expenses is part of the prisoner's responsibility.") (internal citations removed); Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (holding that the prisoner-appellant was obligated to pay the appellate fees and that he agreed to pay such fees upon filing his notice of appeal); Huffman v. Benson, 2006 WL 625844, at *2 (W.D.N.Y. 2006) (refusing to reimburse prisoner or lift the encumbrance placed on prisoner's account after prisoner filed suit and began paying a filing fee in installments pursuant to 28 U.S.C. § 1915(b)(2), but then voluntarily withdrew the case).

    Contrary to the anticipated results of the PLRA, which in part were aimed at encouraging inmates to enter into a cost-benefit analysis before filing lawsuits, Plaintiff either does not seem to grasp this concept or is willfully exploiting the system to avoid paying his just obligations. Rather, he has filed numerous lawsuits and appeals, without paying the requisite filing fees to which he consented, with no apparent indication of any intention to ever pay them. His seemingly willful refusal to pay his filing fees, is evidenced by his commissary sales purchase immediately following his transfer to FMC Rochester in August 2006. See Exhibit 1, Declaration of Dee Hammel, Attachment A.

    Based on the facts as set forth, there is no justification for the Court to enter an Order compelling BOP staff to do anything, and Plaintiff's Motion should be denied.

## **CONCLUSION**

For the reasons discussed above, Plaintiff's motion to compel should be denied.

                Respectfully submitted,

                Rod J. Rosenstein
                United States Attorney

By:   /s/                    

                Matthew W. Mellady
                Special Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES A. BUTLER, | * | |
| | * | |
| Plaintiff, | * | |
| vs. | * | Civil No. WMN-03-708, |
| | * | Civil No. WMN-03-797, and |
| | * | Civil No. WMN-02-4102 |
| UNITED STATES, | * | |
| | * | |
| | * | |
| Defendant. | * | |

## ORDER

UPON CONSIDERATION of the response to Plaintiff's motion to compel and any response thereto, the record in this case and the applicable law, it is this ____ day of _____, 2008:

ORDERED that the Clerk shall mail a copy of this order to counsel and the pro se plaintiff and close this case.

_____
William M. Nickerson
United States District Judge

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of Defendant's Supplemental Response to Plaintiff's Motion to Compel, was mailed this 17th day of July, 2008 to:

James A. Butler
Federal Medical Center
Fed. Reg. No. 10256-050
P.O. Box 4000
Rochester, Minnesota 55903

_____

Matthew W. Mellady
Special Assistant United States Attorney